IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**MICHAEL SORRELL,**

    **Plaintiff,**

v.                                                      Case No. 3:22-cv-00451

**BRAD DOUGLAS, Acting
Commissioner Department of
Corrections and Rehabilitations; et al.,**

    **Defendants.**

## PROPOSED FINDINGS AND RECOMMENDATIONS

On October 12, 2022, Plaintiff filed a *pro se* complaint against Defendants pursuant to 42 U.S.C. § 1983. (ECF No. 1). Currently pending are Plaintiff's Application to Proceed Without Prepayment of Fees and Costs, (ECF No. 5); an initial screening of the complaint under 28 U.S.C. § 1915; and Plaintiff's motion for a temporary restraining order and preliminary injunction, (ECF No. 2). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and by standing order was referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Having thoroughly reviewed the complaint, the undersigned **FINDS** that Plaintiff fails to state a claim upon which relief can be granted and, further, that Plaintiff has failed to exhaust available administrative remedies. Therefore, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **DENY** Plaintiff's application to

1

proceed *in forma pauperis*, as moot, (ECF No. 5); **DISMISS** the complaint, (ECF No. 1); deny Plaintiff's pending motion for a temporary restraining order and preliminary injunction, (ECF No. 2); and **REMOVE** this matter from the docket of the Court.

## I.     Factual and Procedural History

Plaintiff is a West Virginia Division of Corrections and Rehabilitation ("WV DOC") inmate currently incarcerated in the Western Regional Jail and Correctional Facility ("WRJ"). On October 12, 2022, he filed a § 1983 complaint, alleging that mental health workers "Melinda" and "Jaden" told Plaintiff in August 2022 that medication he had been prescribed for the last seven years was going to be "taken away" in 90 days. (ECF No. 1 at 4-5). According to Plaintiff, he was informed that the medication would be discontinued because Wexford Health, the new company contracted to provide medical services at the WRJ, did not offer that particular prescription. (*Id.*). Plaintiff further alleges that he started a substance use disorder treatment on September 29, 2022, and the consent for treatment form indicated that he would need to stay on the treatment plan for at least 18 months. (*Id.* at 6). However, he was told by a medical staff employee that this particular treatment will cease if Plaintiff is transferred to a facility that does not offer the treatment. (*Id.*). Plaintiff claims that there are only four WV DOC facilities that offer the treatment. (*Id.*).

Plaintiff alleges that it constitutes cruel and unusual punishment and deliberate indifference to his medical needs to start a treatment plan for a substance use disorder and not finish it, and to discontinue his mental health medication for no reason other than company policies. (*Id.* at 5-6). He seeks an injunction to (1) continue his current medication for mental health treatment and (2) continue substance use disorder treatment at the WRJ. (*Id.* at 5). He further requests an evaluation at Sharpes Hospital to

determine the best treatment plan for his mental health and a temporary restraining order to stop the WV DOC from transferring him to a facility that does not offer the [medication-assisted treatment (MAT)] program," which would "discontinue [his] treatment with no positive rehabilitative gains." (ECF No. 1 at 8). Plaintiff admits that he did not exhaust his administrative remedies prior to filing the complaint, explaining that it might take up to sixty days to complete the appeals process, and he needed a preliminary injunction to prevent irreparable harm. (*Id.* at 3).

Along with his complaint, Plaintiff filed a "Application for Temporary Restraining Order and Preliminary Injunction" and requested a hearing pursuant to Rule 65 of the Federal Rules of Civil Procedure. (ECF No. 2 at 1). He states that he will suffer an "immediate and irreparable injury" unless preliminary relief is granted. (*Id.*). He adds that the subject of his complaint is "psychotropic medication" for the treatment of post-traumatic stress disorder (PTSD), depression, anxiety, substance use disorder, and "other mental health." (*Id.* at 2). Plaintiff claims that, "if Defendant takes away these medications plaintiff has been prescribe[d] for nearly the last 7 years, [it] will result in irreparable injury to plaintiff." (*Id.*).

## II.   Standard of Review

Pursuant to the provisions of 28 U.S.C. § 1915, the Court must screen each case in which a prisoner seeks to proceed *in forma pauperis* (without prepayment of fees and costs). Further, pursuant to 28 U.S.C. § 1915A, the Court must screen each case in which "a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). The Court must dismiss the case, or any part of it, if the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915(e).

A "frivolous" case has been defined as one which is based upon an indisputably meritless legal theory, *Anders v. California*, 386 U.S. 738, 744 (1967), or lacks "an arguable basis either in law or fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989); *Denton v. Hernandez,* 504 U.S. 25 (1992). A complaint fails to state a compensable claim, and therefore should be dismissed, when viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007).

The Supreme Court of the United States ("Supreme Court") further clarified the "plausibility" standard in *Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009), stating that the court is required to accept as true the factual allegations asserted in the complaint, but is not required to accept the legitimacy of legal conclusions that are "couched as … factual allegation[s]." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.*

This Court is required to liberally construe *pro se* pleadings, such as the one filed in this civil action. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). However, even under this less stringent standard, the pleading must state sufficient factual allegations to support a valid legal cause of action. The Court may not rewrite the pleading to include claims that were never presented, *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998), develop the plaintiff's legal theories for him, *Small v. Endicott,* 998 F.2d 411, 417-18 (7th Cir.

4

1993), or "conjure up questions never squarely presented" to the Court. *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985).

As noted, Plaintiff filed this case pursuant to 42 U.S.C. § 1983. Section 1983 is "not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citation and markings omitted). Section 1983 provides a remedy to parties who are deprived of federally protected civil rights by persons acting under color of any state "law, statute, ordinance, regulation, custom, or usage." Congress enacted § 1983 "to enforce provisions of the Fourteenth Amendment against those who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it." *Monroe v. Pape,* 365 U.S. 167, 171-172 (1961). In order to maintain a *prima facie* case under 42 U.S.C. § 1983, a plaintiff must show through factual allegations that he was (1) deprived of a right secured by the Constitution or laws of the United States, and that (2) the deprivation was committed by a person acting under color of state law. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999); *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003).

### III. Discussion

#### A. *Screening of Complaint*

Plaintiff argues that Defendants are going to violate his constitutional rights by discontinuing psychotropic medication that Plaintiff has taken for seven years to treat PTSD, depression, anxiety, and other mental health conditions. Plaintiff was allegedly advised in August 2022 that Wexford Health, the WRJ's new third-party medical contractor, does not offer that medication, and he would stop receiving it in 90 days. In addition, Plaintiff complains that his substance use disorder treatment will be interrupted

if he is transferred from the WRJ to another WV DOC facility that does not offer the same treatment plan.

The Eighth Amendment to the United States Constitution imposes duties on prison officials to provide humane conditions of confinement, including adequate food, clothing, shelter, and medical care, and the officials must "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). However, "[p]rison conditions may be 'restrictive and even harsh.'" *Farmer*, 511 U.S at 833 (quoting *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981) ("To the extent that [prison] conditions are restrictive or even harsh, they are part of the penalty that criminal offenders pay for their offenses against society."). "The Eighth Amendment does not prohibit cruel and unusual prison conditions; it prohibits cruel and unusual punishments." *Strickler v. Waters,* 989 F.2d 1375, 1381 (4th Cir. 1993). Thus, not every uncomfortable condition of confinement is actionable. *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981). Ultimately, this prohibition "does not mandate comfortable prisons, and only those deprivations denying the 'minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter,* 501 U.S. 294, 298 (1991) (quoting *Rhodes,* 452 U.S. at 347).

To qualify for prospective relief concerning prison conditions under the Eighth Amendment, Plaintiff must demonstrate (1) a serious deprivation of a basic human need and (2) deliberate indifference to prison conditions on the part of prison officials. *Strickler,* 989 F.2d at 1378-79 (citation and markings omitted); *May v. Rubenstein*, No. 1:07-CV-00116, 2008 WL 170594, at *5 (N.D.W. Va. Jan. 17, 2008). "[O]nly those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Shakka v. Smith*, 71 F.3d 162,

166 (4th Cir. 1995). The necessary *prima facie* showing includes both an objective component and a subjective component, meaning that a plaintiff must demonstrate (1) "a deprivation suffered or injury inflicted" that was "sufficiently serious," when measured by an objective standard, (objective component), and (2) that the responsible prison officials had a "sufficiently culpable state of mind," (subjective component). *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298–300 (1991)).

As far as the injury alleged, an inmate has an Eighth Amendment right to be free from deliberate indifference to serious psychiatric needs. *Witherspoon v. Booth*, No. CIV.A . JFM-09-1593, 2010 WL 1881761, at *2 (D. Md. May 6, 2010), *aff'd,* 396 F. App'x 910 (4th Cir. 2010). "There is no underlying distinction between the right to medical care for physical ills and its psychological and psychiatric counterpart." *Id.* (citing *Bowring v. Goodwin,* 551 F.2d 44, 47 (4th Cir. 1977). A plaintiff need not show that he or she has yet suffered any harm to state a claim under the Eighth Amendment, as the Constitution also protects against a substantial risk of future harm. *Helling v. McKinney*, 509 U.S. 25, 33–34 (1993). Courts "have plainly recognized that a remedy for unsafe conditions need not await a tragic event." *Id.* at 33. A defendant may be deliberately indifferent to an inmate's serious medical need by ignoring "a condition of confinement that is sure or very likely to cause serious illness and needless suffering the next week or month or year." *Id.* As the Supreme Court explained, "[i]t would be odd to deny an injunction to inmates who plainly proved an unsafe, life-threatening condition in their prison on the ground that nothing yet had happened to them." *Id.*

Still, even if the § 1983 plaintiff surpasses the first objective hurdle of the Eighth Amendment analysis, he or she must establish the subjective component to allege a cognizable constitutional violation. "Deliberate indifference to a serious medical need

7

requires proof that each defendant knew of and disregarded the risk posed by the plaintiff's objectively serious medical needs." *Malik v. Woods*, No. 5:14-CV-03473-RBH, 2015 WL 6900332, at *5 (D.S.C. Nov. 9, 2015), *aff'd,* 639 F. App'x 188 (4th Cir. 2016) (citing *Farmer,* 511 U.S. at 846). "An assertion of mere negligence or malpractice is not enough to state a constitutional violation, plaintiff must allege and demonstrate deliberate indifference by either actual intent or reckless disregard." *Id.* (citations and markings omitted). "In other words, a plaintiff must allege facts demonstrating that defendant's actions were so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Id.* The United States Court of Appeals for the Fourth Circuit has defined a serious medical need as "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (citing *Iko v. Shreve,* 535 F.3d 225, 241 (4th Cir.2008)).

Addressing first Plaintiff's complaint regarding the potential discontinuation of his psychotropic medication, "there is no constitutional guarantee that insures prisoners will receive medications of their choice without change or adjustment," *Farmer v. Wexford Health Sources, Inc.,* No. CV PWG-17-346, 2017 WL 6388614, at *7 (D. Md. Dec. 13, 2017). Plaintiff fails to assert a plausible constitutional claim because he does not state facts to satisfy either element of the Eighth Amendment test. First, Plaintiff fails to establish the objective component because he does not identify any substantial risk of future harm from not receiving the same medication that he has received for the past seven years. He asserts that the medication is effective and he will suffer "irreparable injury" without it. (ECF Nos. 1 at 5; 2 at 2). However, conclusory allegations do not suffice to state a claim for constitutional violations. At the time Plaintiff filed the complaint, his

8

medication had not been changed. He had no idea what new treatment plan would be proposed by Wexford Health, nor did he identify a single injury or symptom that he would purportedly suffer as a result of a change in medication. His complaint was entirely anticipatory and speculative. A wide variety of medications exist to treat the mental health disorders suffered by Plaintiff—new medications and medication combinations have been developed over the past seven years, which are just as likely than not to prove more beneficial and efficacious in treating Plaintiff's conditions than his current medication. Plaintiff's presumption that a change in psychotropic medication will necessarily cause him harm is completely void of any factual or scientific foundation. Indeed, Plaintiff provides no factual allegations that raise his claim above the purely speculative level. Moreover, because he did not exhaust his administrative remedies, he denied Wexford Health, the WRJ, and the WV DOC from addressing his concerns and perhaps allaying them. Plaintiff asks the Court to arrange an outside psychiatric evaluation for him when he has not even made a request for such an evaluation to the WRJ. Plaintiff's complaint is clearly premature, inviting the Court to interject itself into the daily management decisions of the WRJ, the WV DOC, and Wexford Health. This the Court should not do. *Bell v. Wolfish,* 441 U.S. 520, 547-48 (1979) (holding that prison administrators should be accorded wide-ranging deference in the day-to-day operations of correctional facilities); *Williams v. Branker,* 462 Fed. Appx. 348, 355 (4th Cir. 2012).

Plaintiff similarly fails to satisfy the objective prong of an Eighth Amendment violation in regard to his substance use disorder treatment. To begin, inmates do not have a constitutional right to substance abuse rehabilitation. *Montgomery v. Galloway*, No. CIV.A. ELH-14-3863, 2014 WL 7365285, at *2 (D. Md. Dec. 23, 2014) (collecting cases). Several courts have found that symptoms of alcohol and drug withdrawal can qualify as a

serious medical need, but Plaintiff does not allege that he is suffering or will suffer from withdrawal or any specific symptoms if the medication is discontinued. *Tilson v. Humphrey*, No. 5:19-CV-00033, 2021 WL 4443816, at *5 (W.D. Va. Sept. 27, 2021) (collecting cases). Plaintiff began the treatment on September 29, 2022 and, as he remains in the WRJ, presumably continues to receive that treatment today. Accordingly, acute withdrawal symptoms are unlikely at this point. Plaintiff does not articulate any particular physical or mental harm that would occur if his substance abuse treatment is interrupted or discontinued, nor does he demonstrate that he is in any imminent danger of transfer to a facility without access to substance use disorder treatment.

  As to the subjective component of the Eighth Amendment test, Plaintiff does not demonstrate that any of the defendants were or will be deliberately indifferent to a serious medical need of Plaintiff should one arise. A prisoner can "establish a claim of deliberate indifference by a showing of grossly inadequate care as well as by a decision to take an easier but less efficacious course of treatment." *King v. United States,* 536 F. Appx. 358, 362 (citation omitted). However, Plaintiff does not assert facts to support either finding. Even assuming that Plaintiff alleges a serious medical need, he does not assert that he will not receive any substance abuse or mental health treatment or that he will suffer any particular health effects if his treatment plan is changed. Plaintiff speculates that he is not going to receive a certain type of medication. Although Plaintiff would prefer to remain on that medication, prisoners do not have a right to the medical treatment of their choice. *Id.* at 363. (4th Cir. 2013); *Price v. Dixon,* 961 F. Supp. 894, 899 (E.D.N.C. 1997) (holding that a prisoner "is not entitled by any law to receive the exact mental health treatment, diagnosis, and placement that he might desire.") Plaintiff's claims amount to a mere disagreement between Plaintiff and medical personnel concerning the precise course of

10

treatment, which does not state a viable claim that defendants violated (or will violate) his constitutional rights. *Wright v. Collins,* 766 F.2d 841, 849 (4th Cir. 1985) ("Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged."); *Ashby v. Clear*, No. 7:19CV00715, 2019 WL 6689914, at *1 (W.D. Va. Dec. 6, 2019); *Hall v. Saathoffs*, No. 7:19CV00813, 2020 WL 1814916, at *1 (W.D. Va. Apr. 9, 2020).

In sum, Plaintiff does not assert any facts to suggest that the potential discontinuation and substitution of his medications present a "substantial risk to his health or safety" or that any official was or will be deliberately indifferent to his serious medical need. *See, e.g., May*, 2008 WL 170594, at *3 (finding on initial screening of § 1983 complaint that the denial of access to alcohol and drug rehabilitation programs at the regional jail did not rise to the level of an Eighth Amendment violation because, other than stating that his need was "desperate," the plaintiff presented no evidence that it presented a "substantial risk" to his health or safety, nor did he show that officials subjectively knew of the risks and disregarded them); *United States v. Clawson,* 650 F.3d 530, 538 (4th Cir. 2011) ("The mere possibility of a change in treatment based on the professional judgment of a prison's medical team simply does not give rise to an Eighth Amendment violation."). The undersigned **FINDS** that Plaintiff fails to state a claim for relief under § 1983, and his complaint should be dismissed.

In addition, the Prison Litigation Reform Act ("PLRA") requires inmates to exhaust administrative remedies prior to filing a complaint in federal court. 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are

11

exhausted."). "Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory. All available remedies must now be exhausted; those remedies need not meet federal standards, nor must they be plain, speedy, and effective. Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit." *Porter v. Nussle,* 534 U.S. 516, 524 (2002) (citations and internal quotation marks omitted)).

In *Ross v. Blake,* 578 U.S. 632, 642 (2016), the Supreme Court reiterated the mandatory exhaustion requirement found in § 1997e, but pointed out that the statute contains one explicit exception; the inmate need not exhaust "unavailable" remedies. *Id.* The Court identified "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id.* at 643. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide relief to aggrieved inmates." *Id.* at 643. Second, an administrative process is likewise unavailable when it is "so opaque" that "no ordinary prisoner can discern or navigate it." *Id.* at 643-44. Finally, an inmate need not exhaust administrative remedies when prison officials thwart the inmate's access to the grievance procedure "through machination, misrepresentation, or intimidation." *Id.* at 644. "[S]uch interference with an inmate's pursuit of relief renders the administrative process unavailable." *Id.*

Administrative exhaustion is "not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner." *Hart v. Roderick,* No. CV GLR-15-2054, 2016 WL 3940219, at *3 (D. Md. July 21, 2016) (citations omitted). As such, exhaustion need not be alleged by the plaintiff in his complaint, but is instead "an

affirmative defense that should be pleaded or otherwise properly raised by the defendant." *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F.3d 674, 681 (4th Cir. 2005). Although exhaustion is an affirmative defense, this "does not foreclose in all cases the possibility of a *sua sponte* dismissal on exhaustion grounds." *Id*. In the rare instance when the face of a complaint clearly demonstrates a prisoner's failure to exhaust administrative remedies, *sua sponte* dismissal on that ground is appropriate. *Anderson*, 407 F.3d at 682 (citing *Nasim v. Warden,* 64 F.3d 951 (4th Cir. 1995)).

Here, Plaintiff confirmed on the face of the complaint that the WRJ had a grievance procedure, and Plaintiff filed a grievance. He simply failed to follow through with all steps of the procedure, because he believed it would take too long. (ECF No. 1 at 3). By failing to exhaust the available remedies, Plaintiff deprived the WRJ and the WV DOC of the opportunity to investigate the matter and perhaps resolve Plaintiff's concerns. Plaintiff's worries about future difficulties with his treatment, which might never materialize, simply do not provide an adequate reasons for bypassing the WRJ's available grievance process. *See Ross*, 578 U.S. at 635 ("The Prison Litigation Reform Act of 1995 (PLRA) mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions. 42 U.S.C. § 1997e(a). The court below adopted an unwritten 'special circumstances' exception to that provision, permitting some prisoners to pursue litigation even when they have failed to exhaust available administrative remedies. Today, we reject that freewheeling approach to exhaustion as inconsistent with the PLRA."). In *Ross,* the Supreme Court reiterated that exhaustion is mandatory and "is no longer left to the discretion of the district court." *Id*. at 641 (quoting *Woodford v. Ngo,* 548 U.S. 81, 85 (2006)). Plaintiff alleges no facts to suggest that the WRJ's grievance procedure was not available to him. Consequently, he was required to

comply with the steps of that procedure before proceeding to federal court.

Because this is one of the rare cases in which the failure to exhaust administrative remedies is clear on the face of the complaint, the Court may *sua sponte* dismiss the action on that ground. Accordingly, the undersigned **FINDS** that Plaintiff failed to exhaust available administrative remedies as required by the PLRA, and the complaint should be dismissed for a lack of exhaustion.

### *B. Motion for Temporary Restraining Order and Preliminary Injunction*

The undersigned next considers Plaintiff's "Application for Temporary Restraining Order and Preliminary Injunction." (ECF No. 2). As stated in his complaint, Plaintiff requests a temporary restraining order or preliminary injunction to ensure that he continues to receive his current mental health and substance use disorder treatment at the WRJ. (ECF No. 1 at 5). "The purpose of a temporary restraining order (TRO) or a preliminary injunction is to 'protect the status quo and to prevent irreparable harm during the pendency of a lawsuit, ultimately to preserve the court's ability to render a meaningful judgment on the merits.'" *J.O.P. v. U.S. Dep't of Homeland Sec.*, 409 F. Supp. 3d 367, 375–76 (D. Md. 2019) (citation omitted).

The standard for granting a TRO or a preliminary injunction is the same. *Moore v. Kempthorne*, 464 F. Supp. 2d 519, 525 (E.D. Va. 2006). Both are extraordinary remedies that are awarded sparingly and only upon a clear showing that the plaintiff is entitled to such relief. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). To obtain a TRO or preliminary injunction, the plaintiff must establish **all** four of the following elements: (1) that he or she is likely to succeed on the merits, (2) that he or she is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of

equities tips in his or her favor, and (4) that a preliminary injunction or TRO is in the public interest. *Id.* at 20. In considering a request for such relief, the court must first determine whether the plaintiff has made a strong showing of irreparable harm if the preliminary injunction or TRO were to be denied; in other words, the harm at issue must be "neither remote nor speculative, but actual and imminent" in the absence of relief. *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991). If plaintiff makes such a showing, then the court must balance the likelihood of harm to the plaintiff against the likelihood of harm to the defendant if the preliminary remedy were issued. *Scotts v. United Industries Corp.*, 315 F.3d 264, 271 (4th Cir. 2002). "In the prison context, courts should grant preliminary injunctive relief involving the management of correctional institutions only under exceptional and compelling circumstances." *Kelly v. Hill*, No. ELH-20-2531, 2021 WL 3055615, at *17 (D. Md. July 19, 2021) (citing *Taylor v. Freeman*, 34 F.3d 266, 269 (4th Cir. 1994)).

In this case, the Court must look no further than the first two elements of the four-part test. For the reasons discussed above, Plaintiff does not demonstrate, much less make a "clear showing," that he is likely to succeed on the merits in this § 1983 action. Furthermore, although Plaintiff claims that he will suffer "irreparable harm" in the absence of preliminary relief, he does not assert any facts to identify the supposed harm that he will suffer. Indeed, the entire premise that he will suffer harm is based upon nothing more than the mere possibilities that his psychotropic medication will be changed and the new medication will be less effective, and that he will be transferred, and the transfer will be to a facility which does not offer his current treatment. Moreover, because Plaintiff filed this lawsuit before he exhausted his administrative remedies, he has not even fully explored with the WV DOC whether it would be willing to keep him on his

15

current medications, and housed in the WRJ until his substance use disorder treatment is concluded. Plaintiff does not provide any factual basis to raise his potential for harm from speculative and anticipatory to actual and imminent. Plaintiff's blanket assertion that he will suffer "irreparable harm" is insufficient to provoke an extraordinary preliminary remedy. On that basis, the undersigned **FINDS** that the motion for a TRO and preliminary injunction should be **DENIED**.

### IV.  Proposal and Recommendations

For the reasons set forth above, the undersigned respectfully **PROPOSES** that the foregoing findings be confirmed and adopted and **RECOMMENDS** that the presiding District Judge **DENY** Plaintiff's application to proceed *in forma pauperis*, as moot (ECF No. 5); **DISMISS** the complaint, (ECF No. 1); deny Plaintiff's motion for a preliminary injunction and restraining order, (ECF No. 2); and **REMOVE** this matter from the docket of the Court.

Plaintiff is notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Plaintiff shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Chambers and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Plaintiff.

**FILED:** December 2, 2022

_____
Cheryl A. Eifert
United States Magistrate Judge